UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 25-cr-10295-IT |
| ) | |
| JESSICA M. LESLIE, ) | |
| ) | |
| Defendant. ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Jessica Leslie pled guilty to the sole count of the information in this case, which charges her with criminal contempt, in violation of 18 U.S.C. § 401(3). The parties have executed a written agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) that proposes as punishment a two-year term of supervised release to follow one day of incarceration, which is deemed served. For the reasons that follow, the government states that this sentence is sufficient but not greater than necessary to achieve the goals of sentencing and respectfully requests that this Court accept and impose the jointly-proposed resolution.

**Background**

The government agrees with the facts set forth in the Presentence Investigation Report (PSR) at ¶¶11-31. In sum: the defendant was sworn as a federal grand juror in May 2022. She was advised of the obligation of secrecy imposed by Fed. Rule Crim. P. 6(e). Beginning in 2023, the defendant communicated with a friend by both text messages and voice calls on the dates that she presented for service on the grand jury. Forensic evidence collected by investigators shows that, across several months, the defendant divulged information to her friend that she was required to keep secret: the identity of witnesses, the dates on which they appeared, and the topics they testified about. The defendant talked explicitly about two particular matters occurring before the

1

grand jury, and her friend both posted publicly-available Tweets sharing or commenting on information that implicated both of those investigations and engaged in private chats with other users in which she shared specifics of the details passed on to her by the defendant. In one circumstance, the friend posted about a sealed indictment before the targets were arrested. Someone saw the Tweet, was rightfully concerned, and reported the leak. The defendant was identified as the source and, when questioned by the FBI, admitted to disclosing the secret information and that she knew it was wrong.

## Sentencing Guidelines

The government agrees with U.S. Probation's calculation of the defendant's total offense level (10), which is consistent with how the parties computed it in the written plea agreement. The government therefore agrees that the defendant's Guideline Sentencing Range is a term of incarceration of 6-12 months.

## Application of the Section 3553(a) Factors

Oaths administered by this Court matter. The Court must—and presumably does—*expect* compliance from every person who raises their right hand and promises to abide the Court's orders, whether those orders require an individual to appear at a given place at a given time, to tell the truth, or, as here, to maintain the secrecy of grand jury proceedings to which they are privy. A properly functioning grand jury is essential to the administration of justice, and the proper functioning of the grand jury system depends upon the secrecy of grand jury proceedings. *See Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218-219 (1979). This secrecy helps protect the reputations of individuals who may be investigated but not ultimately indicted; encourages witnesses to testify freely and frankly without fear of retaliation or public scrutiny; and prevents targets from fleeing or tampering with grand jury witnesses. *Id.* This Court

communicated these principles to the federal grand jury on which the defendant was empaneled in May 2022, admonishing specifically that grand jurors "must be careful to preserve that secrecy by not communicating with [their] family, friends, representatives of the news media, or any other person concerning anything that transpires in the grand jury room." PSR ¶13.

The defendant violated that oath, over and over again, across the span of almost a year. The defendant's claim to the FBI that she merely got "wrapped up" in the fervor surrounding ▇ ▇ might be persuasive in another set of circumstances, but here, that claim must be met with some skepticism. This violation was not fleeting, or the product of a momentary lapse in judgment. It was repeated, consistent, and in some cases, planned. On almost every date that she disclosed secret information to her friend, the defendant moved the conversation from text to phone, a move that was obviously designed to avoid the likelihood that she would get caught unlawfully sharing the secret grand jury information. This consciousness of guilt is magnified when examined in the context of her own acknowledgment of what was expected of her. That is, the defendant clarified—to her friend, *as she was disclosing secret information*—that it is illegal for grand jurors to "talk about" what was happening, PSR ¶31(b), and that other grand jurors don't tell other people what happens before them. PSR ¶31(o).

At least one of the defendant's unauthorized disclosures implicated public safety. On January 25, 2024, the defendant texted her friend, "▇ …it'll be in the news tonight." PSR ¶31(l). She went on to describe the overarching basis of ▇ and specifically highlighted that ▇ ▇. That same evening, her friend posted a public tweet, which highlighted that there were impending federal charges for the MSP. This Tweet, at the time it was observed, had already garnered almost 26,000 views. PSR ¶18. It is no leap to assume that some of those views may

3

have been members of MSP, witnesses who testified, or targets of the investigation. The indictment and arrests were not publicized until a full five days later, on January 30, 2024. PSR ¶30(n).

Indictments accompanied by arrest warrants remain sealed for reasons well-known to this Court: there is an inherent risk of flight and, especially where defendants have access to firearms (as would sworn police officers), a risk of danger for the law enforcement tasked with executing the arrest warrants. Thankfully, the defendant's disclosure in this case did not tip off any of the targets here.

This is, however, an egregious transgression of the rules in and of itself, given the nature and scope of the unlawful disclosures. What's worse, perhaps, is that compliance with the court-ordered obligation to maintain confidentiality of the matters occurring before the grand jury should have come easily to the defendant. She has worked for years in a profession that requires the same discretion on a daily basis. Against that backdrop, the breadth of her offending is difficult to comprehend.

Nonetheless, this is not a situation where grand jury material was provided to subjects or targets of the grand jury, or was otherwise used to endanger or retaliate against witnesses or obstruct justice. Furthermore, as the defendant points out, she has suffered a severe collateral consequence in addition to those typically attendant to sustaining a felony conviction: she was terminated from her employment with the Department of Children and Families, a position of trust that requires her to exercise judgment and protect the confidentiality of her clients. This outcome is, of course, foreseeable; but it also is directly relevant to the type and duration of punishment that is merited in these circumstances. Given this and the defendant's lack of criminal history, the significant public attention her prosecution has garnered, the collateral consequences she has

4

suffered, and her swift acceptance of responsibility, the government does not believe that a term of incarceration is necessary to punish the defendant, protect against her recidivism, or promote respect for the law. A term of two years of supervised release is sufficient, and will allow U.S. Probation to monitor the defendant's efforts at rehabilitation.

## Conclusion

On balance, the joint recommendation is a reasonable one that satisfies the Court's obligation to impose a sentence that is just, that reflects the nature and seriousness of the defendant's offense, and that will adequately deter both this defendant and others who might commit the same type of crime. The government requests that the Court accept the plea agreement and impose a sentence of two years' supervised release.

Respectfully Submitted,

LEAH B. FOLEY
United States Attorney

Date: September 25, 2025     By:     /s/ Anne Paruti
Anne Paruti
Assistant United States Attorney
United States Attorney's Office
One Courthouse Way
Boston, MA 02210
617-748-3310

**CERTIFICATE OF SERVICE**

I, Anne Paruti, hereby certify that the unredacted version of this memorandum was emailed to counsel for the defendant prior to its filing under seal and that the redacted version was filed through the Electronic Court filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Date: September 25, 2025                              /s/ Anne Paruti
                                                      Anne Paruti
                                                      Assistant United States Attorney